## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JERMAINE L. REED,

        Plaintiff,

v.

                              **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 09-3505 (MJD/JJK)

MARK LaNASA, acting in his
individual capacity as a police
officer of the City of Minneapolis
Police Department, CLARK GOSET,
acting in his individual capacity as a
police officer of the City of
Minneapolis Police Department, and
THE CITY OF MINNEAPOLIS,

        Defendants.

Christopher A. Johnston and Christopher P. Martineau, Johnston-Martineau, PLLP, Counsel for Plaintiff.

C. Lynne Fundingsland and Gregory P. Sautter, Minneapolis City Attorney's Office, Counsel for Defendants.

## I.       INTRODUCTION

This matter is before the Court on Defendants' Motion for Partial

Summary Judgment.  [Docket No. 18]  The Court heard oral argument on March

16, 2011.  The Court grants Defendants' motion for partial summary judgment

because the officers had probable cause to arrest Plaintiff for violation of the

Minneapolis trespass ordinance.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Plaintiff's Disagreement with Choice

On December 17, 2007, Plaintiff Jermaine Reed and four friends drove

from Des Moines, Iowa, to Minneapolis to attend a Vikings game.  After the

football game, Reed and his friends proceeded to Choice strip club, located at 254

Second Avenue North, in Minneapolis.  They paid a cover charge and entered

the club.

After they entered, Reed found out that Choice did not serve alcohol, so he

wanted to retrieve the cover charge that he had paid and leave.  Reed requested

that Choice return his cover charge, and Choice staff denied his request.  Reed

got into an argument with Choice employees about the cover charge refund,

while he was still standing inside the club.  Choice staff told Reed and his friends

to leave the premises.  Reed insisted that he would not leave until Choice

returned his cover charge.  According to Reed, he did not raise his voice during

the argument, but he admits that he did need to speak loudly to be heard over

the club's music.  The Choice bouncer warned Reed that, if he did not leave,

Choice employees would call the police.

### 2.      Minneapolis Police Are Called to Choice

At 12:58 a.m., on December 18, a Choice employee named Eric called 911

and complained about a "problem customer here that will not leave our building

. . . .  He's right in the entryway.  . . . .  He's hollering – he's not calming down."

Defendant Officer Mark LaNasa and Defendant Officer Clark Goset, both

of the Minneapolis Police Department, were dispatched and arrived on scene at

1:04 a.m.  The officers entered the building, and one officer asked Reed what the

problem was.  According to Reed, Reed and the officers talked for two minutes.

Reed told LaNasa that he wanted a refund of his cover charge.  LaNasa ordered

Reed to leave the premises.  According to Reed, he responded to the order to

leave by saying, "Yes, sir," and leaving the club.

### 3.      Events After Reed Left Choice

Reed claims that, after LaNasa ordered him to leave, he began walking

down the sidewalk, away from the club.  According to Reed's friends, as they

were leaving with Reed, one of Reed's friends was yelling and complaining

about the incident.  They claim that LaNasa stated something along the lines of

"If I hear one more word, I'm taking you to jail."  Reed testified that he heard the officer, partially turned around, and said "Excuse me, sir?"

Reed claims that LaNasa then grabbed Reed around the neck and said, "You are under arrest."  Reed asserts that he responded, "Okay," and put his arms behind his back.  According to Reed, after the arrest, Goset and LaNasa then proceeded to attack Reed with a Taser and by choking and striking Reed. Reed also testifies that LaNasa used a racial epithet to taunt him.  The claims of excessive force and racial animus, which relate to the actions that allegedly occurred after Reed's arrest, are not at issue in the motion currently before the Court.  Defendants dispute Reed's version of events, but agree that genuine issues of material fact exist as to those claims.

### B.    Procedural Background

On December 8, 2009, Plaintiff filed a Complaint against Goset, LaNasa, and the City of Minneapolis ("the City").  [Docket No. 1]  The Complaint alleges:

Count One, 42 U.S.C. § 1983 Civil Rights Violations by Defendant LaNasa (based on search, seizure, false arrest and detention, and due process);

Count Two, 42 U.S.C. § 1981 Civil Rights Violations by Defendant LaNasa (based on racially motivated acts and due process);

Count Three, 42 U.S.C. § 1983 Civil Rights Violations by Defendant Goset (based on search, seizure, false arrest, and detention, and due process);

Count Four, 42 U.S.C. § 1981 Civil Rights Violations by Defendant Goset (based on racially motivated acts and due process);

Count Five, Civil Rights Violations by Defendant City of Minneapolis;

Count Six, Assault by LaNasa;

Count Seven, Battery by LaNasa;

Count Eight; False Imprisonment by LaNasa;

Count Nine, Battery by Goset;

Count Ten, False Imprisonment by Goset; and

Count Eleven, Negligent Hiring, Supervision, Retention by City of Minneapolis.

At oral argument, Plaintiff agreed that summary judgment should be entered as to Counts Four, Five, Six, and Eleven, so those counts are no longer at issue.

Defendants now move for summary judgment on Count One (LaNasa) as to search, arrest, and detention of Plaintiff and due process (but not excessive force and seizure); Count Two (LaNasa) as to due process (but not as to racially motivated acts); Count Three (Goset) as to search, arrest, and detention of

Plaintiff and due process (but not excessive force and seizure); Count Four

(Goset) in its entirety; Count Five (the City) in its entirety; Count Six (LaNasa) in

its entirety; Count Eight (LaNasa) in its entirety; Count Ten (Goset) in its entirety;

and Count Eleven (the City) in its entirety.  Defendants do not move for

summary judgment with regard to the officers' use of force, battery, or racially

motivated actions by LaNasa because they concede that there are genuine issues

of material fact on these claims.

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

<u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B.    Qualified Immunity Standard

"The doctrine of qualified immunity protects the officers from personal liability under § 1983 insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (citation omitted). "To overcome the defendants' qualified immunity claims, the plaintiffs must show that: "(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." Id. at 474 (citation omitted). The Court can use its discretion to decide which qualified immunity prong should be addressed first. Id. In this case, the Court first addresses whether the facts, viewed in the light most favorable to Reed, establish a violation of his constitutional rights. The Court concludes that they do not.

### C.   Arrest of Plaintiff

#### 1.   Probable Cause Standard

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. Whether the police had probable cause at the time of [Plaintiff's] arrest is a question of law for a court to decide. An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. To determine the existence of probable cause, we look at the totality of the circumstances as set

> forth in the information available to the officers at the time of arrest.
> As probable cause is determined at the moment the arrest was
> made, any later developed facts are irrelevant to the probable cause
> analysis for an arrest.  [O]fficers are generally entitled to rely on the
> veracity of information supplied by the victim of a crime.

Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816-17 (8th Cir. 2010) (citations

omitted).  If actual probable cause exists, the Court need not decide whether

qualified immunity applies.  Id. at 818.  "[I]f an officer has probable cause to

believe that an individual has committed even a very minor criminal offense in

his presence, he may, without violating the Fourth Amendment, arrest the

offender."  Baribeau, 596 F.3d at 474 (quoting Atwater v. City of Lago Vista, 532

U.S. 318, 354 (2001)).

> The substance of all the definitions of probable cause is a reasonable
> ground for belief of guilt.  A "reasonable ground for belief" means
> more than bare suspicion, but less than evidence which would
> justify condemnation or conviction.

Baribeau, 596 F.3d at 474 (citations omitted).  An officer's "subjective reason for

making the arrest need not be the criminal offense as to which the known facts

provide probable cause."  Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

### 2.    Trespass

#### a)    The Minneapolis Trespass Ordinance

The Court concludes that Defendants are entitled to summary judgment

on claims based on their arrest of Reed because they had probable cause to arrest

him for trespass:

> No person shall intentionally enter or remain upon or within the
> land or property of another and, without claim of right, refuse to
> depart therefrom on demand of a lawful possessor thereof or his or
> her agent.  A demand to depart may be made orally, or in writing,
> by the lawful possessor or the possessor's agent.

Minneapolis Code § 385.380(b)(1).

### b)    Whether There Was Probable Cause that Reed's Actions Met the Elements of Trespass

It is undisputed that Reed entered Choice, got into a dispute with Choice

staff, was ordered to leave by Choice staff, and still remained on the premises.

Reed remained in Choice long enough that Choice staff warned him that they

were going to call the police if he did not leave and did, in fact, call the police to

assist in removing Reed from Choice.  Six minutes passed from the time Choice

staff made the 911 call to the time officers arrived, so, at a minimum, Reed

remained on the Choice premises, after being ordered to leave by Choice staff,

for six minutes.  Reed does not dispute that, when Goset and LaNasa arrived at

Choice, Reed was still inside Choice although the agent of the lawful possessor –

Choice staff – had demanded that he depart, and that, at that time, Choice staff

asked Goset and LaNasa to assist them in ejecting Reed.  Reed asserts, however,

that he had a claim of right to stay on Choice property, which prevented

Defendants from having probable cause to arrest him.

"Claim of right" means that a person has a reasonable belief that he has

license or permission to be on the property.  State v. Brechon, 352 N.W.2d 745,

748 (Minn. 1984).  "An act which, as related to the true owner of land, might

appear to be trespass is not in fact a trespass if the act is committed in good faith

by one who actually and sincerely believes that he is authorized (either because

authorized by the true owner or because he believes himself to be the true

owner) to do the act in question."  Id. at 749.  A claim of right is not limited to a

claim of actual title; it also includes express or implied consent to a license from a

person who has authorization to give such consent.  State v. Hoyt, 304 N.W.2d

884, 889 (Minn. 1981).

> "[W]ithout claim of right" is an element the state must prove beyond
> a reasonable doubt.  Thus, in a criminal trespass case the state must
> present evidence from which it is reasonable to infer that the
> defendant has no legal claim of right to be on the premises where
> the trespass is alleged to have occurred.  This evidence normally
> would be in the realm of property law, such as that the title or right
> of possession is in a third party and that no title or permission has
> been given to defendant, or if given has been withdrawn.  This
> evidence should be of such a nature as to permit a reasonable
> inference that there could be no claim of right by defendant.  If the

state fails to offer evidence which by reasonable inference negates the defendant's claim of right, the issue of intent to trespass is never reached, since the criminal complaint must be dismissed.

If the state presents evidence that defendant has no claim of right, the burden then shifts to the defendant who may offer evidence of his reasonable belief that he has a property right, such as that of an owner, tenant, lessee, licensee or invitee.  Subjective reasons not related to a claimed property right or permission are irrelevant and immaterial to the issue of claim of right.

Brechon, 352 N.W.2d at 750 (citation omitted).

Reed asserts that he had a claim of right to remain at Choice to attempt to recover his cover charge.  He argues that he had a sincere belief that he was authorized to remain to attempt to get his money back.  Reed argues that, because he asked LaNasa for help in getting his money back, LaNasa had notice of Reed's legitimate reason for being on the club's premises.

Merely because Reed was involved in an argument with Choice staff over his cover charge did not give rise to a claim of right to remain.  The evidence before the officers was that Choice had the right to possession of the club and that its permission to Reed to be on the property had been withdrawn by Choice's agents (its staff).  Reed offered no evidence to the officers that he had a property right to the Choice premises, "such as that of an owner, tenant, lessee, licensee or invitee."  Id.  Whether or not Reed reasonably believed that he was

11

entitled to the return of his cover charge, he did not have a reasonable belief that

he had license or permission to be on Choice's property.  State v. Noesen is

instructive.  No. A06-624, 2007 WL 1322313 (Minn. Ct. App. May 8, 2007).  In

Noesen, the Minnesota Court of Appeals upheld a trespass conviction when a

jury found that a fired employee did not have a claim of right while he was

arguing with the employer about his termination, although he subjectively

believed that he had a right to stay and explain his civil rights violation claim

against the employer, because he had been asked to leave several times and the

employer had threatened that it would call the police to escort the former

employee from the building.  Id., at *2.  The court explained: "Having been

terminated, neither the reasons for appellant's termination nor his belief that [his

employer] had failed to provide reasonable employment accommodation

pertains to any property right of appellant or any permission for him to remain

on [his employer's] property."  Id.  See also State v. Occhino, 572 N.W.2d 316, 319

(Minn. Ct. App. 1997) ("Occhino's repeated refusals to leave and his intentional

act of remaining at the police desk area, while having no lawful reason to be at

that area, then constituted trespass.") (citation omitted).

12

Choice staff's demand that Reed leave, followed by a threat to call the police, and a call to the police, establish an unequivocal demand to leave the premises by the agents of the possessor of the property. Reed's subjective desire to remain on the premises in order to be reimbursed for his cover charge is irrelevant to whether he had a reasonable belief that he had a right to remain on the property. "Subjective reasons not related to a claimed property right or permission are irrelevant and immaterial to the issue of claim of right." Brechon, 352 N.W.2d at 750.

In any case, the officers only needed probable cause to arrest Reed. "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005) (citations omitted). It would have been reasonable for the officers to believe that Reed did not have a claim of right when he had remained on the premises for at least six minutes after being told multiple times to leave by Choice staff, despite his sincere belief that Choice should return his cover charge. These facts establish probable cause to arrest Reed for trespass under the Minneapolis

13

trespass ordinance.  Because probable cause existed to arrest Reed for trespass,

both Goset and LaNasa are entitled to summary judgment on Reed's federal

claims with regard to his arrest and detention in Counts One and Three.

>     D.     **Due Process Allegations**

The components of Counts One, Two, Three, and Four that allege

deprivation of due process also fail.  The claims are based on Reed's arrest,

detention, and prosecution, and, therefore, are analyzed under the Fourth

Amendment.  As the Court has explained, Defendants are entitled to summary

judgment with regard to arrest because they had probable cause to arrest Reed.

Section 1983 excessive force claims are analyzed under the Fourth Amendment's

objective reasonableness standard.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001),

overruled in part on other grounds by Pearson v. Callahan, 129 S. Ct. 808 (2009).

Therefore, Reed's substantive due process claim cannot be based on the

allegation of excessive force.  See Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th

Cir. 2000) (holding that, when Fourth Amendment applies to claim, then the

more general due process standard does not apply).  Nor does Reed plead facts

to support a claim for procedural due process.  Therefore, to the extent that

Counts One, Two, Three, and Four are based on allegations of the deprivation of due process, summary judgment is granted to Defendants.

### E.      Allegations Based on a Search

Counts One and Three assert that Defendants performed an illegal search. However, Reed has pointed to no evidence of any search occurring.  Therefore, to the extent these Counts are based on an illegal search, summary judgment is granted to Defendants.

### F.      Official Immunity

Defendants have moved for summary judgment with regard to the following state claims: Counts Six, Eight, Ten, and Eleven.  Plaintiff admits that summary judgment is appropriate as to Counts Six and Eleven.  The Court now addresses Counts Eight and Ten, the false imprisonment claims.

### 1.      Official Immunity

Under Minnesota's official immunity doctrine, "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988) (citations omitted).  The Court uses a two-step inquiry to determine whether

official immunity is available to an officer: "(1) whether the alleged acts are

discretionary or ministerial; and (2) whether the alleged acts, even though of the

type covered by official immunity, were malicious or willful and therefore

stripped of the immunity's protection." Dokman v. County of Hennepin, 637

N.W.2d 286, 296 (Minn. Ct. App. 2001) (citation omitted).  "Malice means nothing

more than the intentional doing of a wrongful act without legal justification or

excuse, or, otherwise stated, the willful violation of a known right." Rico v. State,

472 N.W.2d 100, 107 (Minn. 1991) (citation omitted).


### 2.    False Imprisonment (Counts Eight and Ten)

> The action for the tort of false imprisonment or false arrest protects
> the personal interest in freedom from restraint of movement.  The
> restraint may be imposed by the assertion of legal authority, and if
> an arrest is made without proper legal authority, it is a false arrest,
> and so false imprisonment.  In the context of this case, the essential
> elements of plaintiff's claim for relief are (1) an arrest performed by
> defendant, and (2) the unlawfulness of such arrest.

Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974) (footnotes omitted).

Under Minnesota law, an officer may make a warrantless arrest for a

misdemeanor committed in the officer's presence. Johnson v. Morris, 453

N.W.2d 31, 36 (Minn. 1990).  "If probable cause to arrest exists, the subsequent

arrest is lawful and there is no cause of action for false arrest or false

imprisonment." Id. (citation omitted). "Probable cause to arrest exists where the objective facts are such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." State v. Horner, 617 N.W.2d 789, 795 (Minn. 2000) (citation omitted).  "While probable cause to arrest requires something more than mere suspicion, it requires less than the evidence necessary for conviction." Id. at 796 (citation omitted).

Because, as explained with regard to Counts One and Three, the officers had probable cause to arrest Reed for violation of the trespass ordinance, they did not willfully violate a known right by arresting him.  Therefore, LaNasa and Goset are entitled to summary judgment with regard to Counts Eight and Ten, False Imprisonment.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendants' Motion for Partial Summary Judgment [Docket No. 18]
is **GRANTED**. The following counts are **DISMISSED**:

1.      Count One, 42 U.S.C. § 1983 Civil Rights Violations by LaNasa as to search, arrest, and detention of Plaintiff (but not as to excessive force and seizure);

2.      Count Two, 42 U.S.C. § 1981 Civil Rights Violations by LaNasa as to due process (but not as to racially motivated acts);

3.      Count Three 42 U.S.C. § 1983 Civil Rights Violations by Goset as to search, arrest, and detention of Plaintiff (but not as to excessive force and seizure);

4.      Count Four, 42 U.S.C. § 1981 Civil Rights Violations by Defendant Goset, in its entirety;

5.      Count Five, Civil Rights Violations by Defendant City of Minneapolis, in its entirety;

6.      Count Six, Assault by LaNasa, in its entirety;

7.      Count Eight, False Imprisonment by LaNasa, in its entirety;

8.      Count Ten, False Imprisonment by Goset, in its entirety; and

9.      Count Eleven, Negligent Hiring, Supervision, Retention by City of Minneapolis, in its entirety.

Dated:   April 29, 2011            s/ Michael J. Davis                                    
                                    Michael J. Davis
                                    Chief Judge
                                    United States District Court